1806.

Worthington.
vs.
Bicknell

6. That the appellant is entitled to an account of the profits to sink the mortgage debt. He referred to *Jarrett vs. West*, in this court.

*Shaaff*, for the appellees. A decree for a specific execution of a contract is not *ex debito justitiæ*, but at the discretion of the court. An agreement, to merit the interposition of a court of equity in its favour, must be fair, reasonable, *bona fide*, certain in all its parts, mutual, useful, made upon a good or valuable consideration, not merely voluntary, free from fraud, &c. 2 *Pow. on Cont.* 221. Unless a contract has all these ingredients, a court of equity will not decree a specific performance. The Chancellor decreed in this case, upon the ground that notice was not sufficiently proved. And in support of the decree dismissing the bill, it is contended—1. That there was no contract proved. 2. If there was a contract, it was a voluntary and fraudulent one. 3. The bill has not charged any thing like notice to *Robinett*. He referred to 1 *Pow. on Cont.* 302. *Butcher vs. Stapely*, 1 *Vern.* 365. *Borret vs. Gomeserra, Bunb. Rep.* 94. 2 *Eq. Ca. Ab.* 17, 48.

THE COURT OF APPEALS *affirmed* the decree of the Court of Chancery.

---

December.

WORTHINGTON, *et al. vs.* BICKNELL.

A executed a mortgage to B, of real and personal property, to secure the payment of a sum in the *then* current money, and it was afterwards agreed between them, that the personal property should be released, on A's endorsing on the mortgage that it was a *specie* debt. A afterwards conveyed his equity of redemption in the real estate to C, who, on the representations of B, of the sum due on the mortgage, and that it should not be released unless C executed to him his bond for that sum, did accordingly execute such bond; on which a suit at law was brought, and judgment rendered thereon. On a bill in chancery by C, an injunction was obtained to stay proceedings at law. The auditor was ordered to state the mortgage debt in continental money, reducing it into specie at 5 for 1, with interest, and credit the payments made; and on such statement it appeared that the debt was over paid. *Decreed*, that the injunction be perpetual.

Parol evidence admitted to prove, that a debt secured by a mortgage was continental money, altho' expressed to be a specie debt.

Where there is a mortgage, with a personal covenant by the mortgagor that he will pay the money, and he assigns his equity of redemption, is he a competent witness for the assignee to prove that the money loaned was continental money? *Quere.*

The assignee of a mortgage is entitled to the same relief that the mortgagor would have been entitled to against the mortgagee.

A decree in favour of the *complainant*, but *without costs*, was on appeal by the *defendant*, reversed as to costs, and affirmed as to the residue; and decreed that the complainant should recover his costs in both courts.

APPEAL from a decree of the Court of Chancery. The bill, filed by the present appellees in 1801, stated that

*Richard Robinson,* being seized in fee of several tracts of land, on the 1st of May 1778, borrowed £170 of the then current money, of *B. T. B. Worthington,* whose executors and representatives the appellants are, and executed a mortgage of his said lands, and sundry slaves, &c. for the payment of the said sum of money, with interest thereon, on the 1st of September then next ensuing. That *Robinson* being about to leave the state, on the 6th of October 1782, applied to *Worthington* to release the personal property mortgaged, as the land was amply sufficient for the payment of the mortgage debt, which he refused to do unless *Robinson* would endorse on the mortgage the sum of money then due in gold and silver, which he agreed to, and the sum then stated to be due was £145 3 3 gold and silver, current money. That on the 15th of October 1782, *Robinson* assigned all his right, and equity of redemption in the mortgaged premises, to *Ninian Riggs.* That *Robinson,* after the mortgage, became indebted to the complainant, *Bicknell,* for money actually paid and advanced. That *Robinson,* in consideration thereof, and in consequence of a contract between the complainant and *Riggs,* agreed that the right of redemption in the mortgaged premises should be conveyed to the complainant, and a deed was accordingly executed. That the complainant having obtained the conveyance, and being interested in the payment of the mortgage debt, was applied to by *Worthington* on the subject, who represented to the complainant that there was then due from *Robinson* to him, for principal and interest, the sum of £171 6 0, on the 26th of February 1791, and that the complainant could not and should not obtain the benefit of the equity of redemption by a release of the mortgage, unless he gave him his bond for that sum of money; and that the complainant, confiding in the representations of *Worthington,* gave his bond accordingly. That *Worthington* is since dead, and *J. Worthington,* one of the defendants, is his executor, who has brought an action at law on the bond, and obtained a judgment. That the executor, and the other defendants, on the 25th of July 1795, filed a bill against *Robinson, Riggs,* and the complainant, for a sale or foreclosure of the equity of redemption of the mortgaged premises. That by the answers to that bill, and the evidence taken, it appears that the sum loaned by *Worthington* to *Robinson,* and the mortgage taken, was to

*1806.*

*Worthington*
*vs*
*Bicknell*

1806.

Worthington
vs
Bicknell

secure the payment of continental money, and that the sum due, calculating its worth by the scale of depreciation, with legal interest, had been paid off or reduced to the sum of £9 5 2 current money, on the 13th of December 1798. That the executor of *Worthington* is indebted to the complainant in the sum of £13 17 6, current money, for articles charged in the account exhibited. *Prayer* for a perpetual *injunction* against execution issuing on the judgment at law, and to compel a release of the mortgaged premises, &c.

On the coming in of the *answers*, and on the testimony taken in the cause, amongst which was that of *Robinson*, the *Auditor* was directed to state an account between the parties. He made various statements, to which both parties excepted, and by the Chancellor's order he made one, wherein the money loaned to *Robinson* on the mortgage, viz. £170 continental money, was charged against *Bicknell* at 5 for 1, with the interest thereon, and after crediting payments made at various times, and the costs on the bill filed by the executors, &c. of *Worthington*, which they had dismissed, left a balance due to the complainant, on the 1st of March 1804, of £10 1 11, current money.

HANSON, Chancellor, (7th March, 1804,) *decreed*, that the injunction issued be perpetual; and that each party pay his own costs, &c. From this decree the defendants appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN and NICHOLSON, J.

*Ridgely*, for the appellants, contended, 1. That all the necessary and proper parties are not before the court. He referred to *Hind's Prac.* 2. 2 *Eq. Ab.* 170, *Pre. in Chan.* 83.

2. That *Bicknell* is not entitled to relief on account of the transaction between *Robinson* and *Worthington*, because he is no party to the contract, and has no privity of interest, he not representing *Robinson*.

3. That if *Bicknell* has a privity of interest, and is entitled to *Robinson's* equity, yet there is no legal testimony in the cause to prove the facts alleged in the bill, because *Robinson*, the only person produced as a witness, is incompe-

tent on two grounds, 1st. He is interested, because there is a personal covenant in his mortgage to *Worthington*, that he will pay the money; and 2d. Because he is swearing to impeach the security he gave, and to invalidate his own act and deed. He cited *Gilb. L. E.* 122. *Hesketh vs. Braddock*, 3 *Burr.* 1856. *Walton vs. Shelly*, 1 *T. R.* 296. *Buckland vs. Tankard*, 5 *T. R.* 578. *Goodtittle vs. Bailey*, *Cowp.* 600. 1 *Fonbl.* 188. 1 *Harr. Chan.* 305, 613.

*Johnson*, (Attorney General,) for the appellee, referred to *Piddock vs. Brown, et. al.* 3 *P. Wms.* 289. 2 *Com. Dig.* 96.

The Court of Appeals *decreed*, that so much of the decree of the chancellor, as granted a perpetual injunction on the judgment in the bill and proceedings mentioned, be *affirmed*; and that that part of the said decree, by which each party was to pay his own costs, be *reversed*; and also *decreed*, that the appellants pay to the appellee all the costs incurred by him in the court of chancery, and in this court.